128

HOWARD GOLDEN, as Borough President of the Borough of Brooklyn, et al., Appellants, v METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents, and GUY MOLINARI, Intervenor-Respondent.

Second Department, March 2, 1987

## APPEARANCES OF COUNSEL

*Peter L. Zimroth, Corporation Counsel (Leonard Koerner* and *Ellen B. Fishman* of counsel), for Howard Golden, appellant.

*Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P. C. (Edward Copeland* and *Mark Barenberg* of counsel), for James A. Stratton, as President and on Behalf of The Soho Alliance, appellant.

*Robert Bergen (Lester G. Freundlich* of counsel), for respondents.

## OPINION OF THE COURT

Per Curiam.

In December 1985 the President of the United States signed into law the Department of Transportation and Related Agencies Appropriations Act of 1986 (Pub L 99-190). The Department of Transportation and Related Agencies Appropriations Act of 1986 § 324 (a) provides that "[t]olls collected for motor vehicles on any bridge connecting the borough of Brooklyn, New York, and Staten Island, New York, *shall* only be collected for those vehicles exiting from such bridge in Staten Island" (emphasis added). Subdivision (b) of that section, entitled "Enforcement", provides that in the event that there were a failure to comply with the directive contained in subdivision (a), the State of New York would forfeit 1% of the Federal highway aid to which it would otherwise be entitled pursuant to 23 USC §§ 104 and 144. Subdivision (d) of the section provides that subdivisions (a) and (b) may be rendered ineffective if the Secretary of Transportation, upon a petition

by the Governor of New York, determines that the mandated one-way toll system has resulted in "substantial loss of revenues" or "significant traffic problems".

The terms of Department of Transportation and Related Agencies Appropriations Act of 1986 § 324 became effective, under subdivision (c) of that section, on the 90th day following its enactment into law. Accordingly, since March 20, 1986, tolls have been collected on the Verrazano Narrows Bridge only from those vehicles which exit from the bridge in Staten Island. The respondent Triborough Bridge and Tunnel Authority (hereinafter the TBTA), a public authority and public benefit corporation responsible for the operation of the bridge, also determined that the amount of the toll should be doubled. The doubling of the toll compensates for the loss of revenues which results from the Federal prohibition against collecting tolls from vehicles which exit from the bridge in Brooklyn.

After the rearrangement of the toll collection system had been accomplished, Howard Golden, the Borough President of the Borough of Brooklyn, commenced the instant proceeding, by way of order to show cause signed on March 24, 1986, in which he sought, *inter alia,* to review the respondents' determination to implement the one-way toll system restraining the respondents from enforcing the one-way toll collection system so as to, in effect, order the respondents to return to the previous toll collection system. Similar relief was requested by petitioner James A. Stratton, as president and on behalf of the Soho Alliance, a neighborhood association which includes residents of Manhattan's "Soho" district, who was granted leave to intervene in the proceeding and was added as a petitioner. Also, the court granted leave to intervene to Congressman Guy Molinari, the author of the Federal legislation which mandated the implementation of a one-way toll system.

Mr. Golden and Mr. Stratton based their request for injunctive relief, both preliminary and permanent, upon the assertion that the implementation of the one-way toll system was an action undertaken by State agencies which may have a significant effect on the environment, so that, under the provisions of the State Environmental Quality Review Act (SEQRA), the action should have been preceded by the preparation of an environmental impact statement (hereinafter EIS) *(see,* ECL 8-0109 [2]; 8-0105 [1], [3], [4] [i]). The respondents contended that their action in implementing the one-way toll system was mandated by Federal law, and thus, was a purely

ministerial act, exempt from the requirements of SEQRA *(see, ECL 8-0105 [5] [ii]; Citizens for Preservation of Windsor Terrace v Smith,* 122 AD2d 827).

The Supreme Court, by order dated June 20, 1986, rejected the respondents' argument that their action was purely ministerial, so as to be exempt from SEQRA. The court therefore directed respondents to comply with SEQRA and to prepare an EIS. However, the court denied the applications for a preliminary injunction. It is from this portion of the court's order that the petitioners have appealed. For the reasons that follow, we affirm the order insofar as appealed from.

■ We note preliminarily that since the respondents MTA and TBTA have not appealed, we are without jurisdiction to grant them any affirmative relief *(see, Hecht v City of New York,* 60 NY2d 57; *Campese v Metropolitan Tr. Auth.,* 114 AD2d 988). Moreover, we would agree with the Supreme Court that the respondents' implementation of the one-way toll system was not a purely ministerial action. We recognize that the Department of Transportation and Related Agencies Appropriations Act of 1986 § 324 (a) contains the ordinarily mandatory word "shall", but this is not necessarily a controlling factor *(see, United States v Rodgers,* 461 US 677; *Matter of Skidmore Coll. v Cline,* 58 Misc 2d 582, *affd* 32 AD2d 985; 56 NY Jur, Statutes, § 18). The statute must be read as a whole, rather than as a collection of isolated provisions *(see generally, Philbrook v Glodgett,* 421 US 707; *Levine v Bornstein,* 4 NY2d 241; 56 NY Jur, Statutes, § 201). Considered in light of these principles, the Federal law in question does not strictly mandate the implementation of a one-way toll system on the Verrazano Narrows Bridge. Rather, the statute makes the implementation of such a system a condition to the retention of certain Federal aid. Thus, the MTA and TBTA retained the discretion lawfully to refuse to implement the one-way toll system, and, therefore, their action was not purely ministerial within the meaning of SEQRA (ECL 8-0105 [5] [ii]).

■ The petitioners argue that, since the court correctly concluded that the one-way toll collection system was implemented in violation of SEQRA, it should have gone on to issue a broad preliminary injunction compelling the respondents to return to the preexisting two-directional toll collection system. The petitioners argue that it is only by restoring the status quo ante that this court may properly enforce the policies underlying the SEQRA statute to their fullest. We disagree.

We recognize that, as a general rule, once a violation of SEQRA has been shown, the proper remedy is to annul whatever agency determinations may have been made in the absence of full compliance with SEQRA *(see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359; *Matter of Tri-County Taxpayers Assn. v Town Bd.,* 55 NY2d 41). The Court of Appeals, in the foregoing cases, rejected the suggestion that an agency should be allowed to consider whether to reverse an existing determination, after having complied with SEQRA, and held that any determination made in violation of SEQRA must be rendered void *ab initio.* The court recognized that environmental considerations would, as a practical matter, be given more weight in the context of an agency's determination in the first instance as to whether to allow a certain project, than in the context of an agency's determination whether to revoke permission which has already been granted for a certain project. Thus, for example, in the *Chinese Staff & Workers Assn. (supra)* case the majority of the Court of Appeals held that the granting of a permit by certain agencies which had not properly complied with SEQRA had to be annulled, and rejected the argument of the dissenters that the policies underlying SEQRA can be effectuated by simply ordering the agencies to make the proper environmental review and then decide whether to revoke the permit which had been granted.

The rationale of the foregoing cases is inapplicable to the facts presented here. In those cases, the legal challenge to an agency's authorization of a certain project had commenced before the project itself had begun. In the case now under review, the project has gone beyond the planning phase and has actually been implemented. We do not read these cases as holding that, as a matter of law, any actions taken pursuant to an invalid agency determination must be "undone", or that, as a matter of law, the court must remedy an apparent SEQRA violation by ordering a return to the status quo ante, that is, to conditions as they existed before the agency action was taken.

Various Federal courts, in construing the analogous provisions of the National Environmental Policy Act, have concluded that broad injunctive relief may not always be appropriate. In *Steubing v Brinegar* (511 F2d 489, 495), the United States Court of Appeals for the Second Circuit noted that injunctive relief may be inappropriate where "construction may have gone so far that for economic reasons it would be

impracticable or impossible to alter much of the basic plan". Federal courts have frequently denied injunctive relief where those claiming to have been aggrieved by violations of Federal environmental law fail to commence their legal proceedings until after significant investments have been made in the challenged project (see, Riverdale Envtl. Action Comm. v Metropolitan Transp. Auth., 638 F Supp 99, 102-103 [SDNY], affd 797 F2d 110; Sierra Club v Alexander, 484 F Supp 455 [ND NY], affd 633 F2d 206; Dalsis v Hills, 424 F Supp 784 [WD NY]).

In the case now under review, the respondents actually decided to implement the one-way toll as early as February 28, 1986. This determination was widely reported in local newspapers during the following days. It is clear from the record that the petitioner Golden knew of the respondents' intentions even before this formal determination had been made, and that the petitioner Stratton nowhere denied that he knew, or should have known, of the respondents' intent to implement the one-way toll. Moreover, the respondents assert that the one-way toll system was implemented at a cost of approximately $430,000. There would be considerable expense involved in reverting to the old two-way toll collection system. Further, the respondents assert that a sudden reversion back to the two-way toll system would cause "havoc" as the result of driver confusion.

For the foregoing reasons we find that the court properly refused to issue a preliminary injunction. We find that such relief would be unwarranted for the further reason that the State of New York, which would lose substantial revenues in the event that the one-way toll collection system were abandoned, was not joined as a party to this proceeding. We consider the State to be a necessary party, since the State "might be inequitably affected by a judgment in the action" (see, CPLR 1001 [a]; Matter of Lezette v Board of Educ., 35 NY2d 272, 282).

In conclusion, we note that the Supreme Court did not finally determine the proceeding before it, since it neither dismissed nor granted so much of the petitions as sought a permanent injunction. That court has therefore retained jurisdiction over the parties in contemplation of future proceedings. Having held that the denial of a preliminary injunction was not erroneous nor an abuse of the court's discretion, we affirm the order insofar as appealed from, and remit the

matter for further proceedings, including the joinder of the State of New York as a party respondent.

MANGANO, J. P., BRACKEN, WEINSTEIN and RUBIN, JJ., concur.

Ordered that the notices of appeal from the order dated June 20, 1986, are treated as applications for leave to appeal, those applications are referred to Justice Mangano and leave to appeal is granted by Justice Mangano; and it is further,

Ordered that upon appeal by permission, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for further proceedings, including an application by the petitioners, if they be so advised, to add the State of New York as a necessary party.