OPINION OF THE COURT
Simons, J.
Petitioner, a developer of an oceanside resort in East Hampton, Long Island, challenges the power of respondents, local Town officials, to reexamine its project and impose substantial new conditions on its development after construction had been completed. The construction had proceeded in two phases and the site plans for both had been approved by the Town Planning Board. The resolution approving the second, or modified, site plan, was successfully attacked in court because of the failure of the Planning Board to follow the requirements of the State Environmental Quality Review Act (SEQRA), however, and petitioner was ordered to submit a new modified site plan application. When it did, there had *363 been a political change in the leadership of the Town and of the membership of its Planning Board. The newly appointed Planning Board reeexamined petitioner’s entire development de novo, although challenge of the first phase was time barred, and substantially changed the requirements for developing and using the improvements authorized in the first site plan. Petitioner contends that the local officials should be equitably estopped from reexamining the site plans as initially approved and that certificates of occupancy for all of the motel units should be issued. It further contends that even if respondents had the power to reexamine the entire development upon the required resubmission of the modified site plan, that power was exercised in an arbitrary and capricious manner in this case.
 We agree with respondent officials that they are not estopped from reviewing the entire development even though construction according to the originally approved plans had been completed prior to the determination that SEQRA had been violated. The exercise of that power under the circumstances presented was arbitrary and capricious, however, because respondents in reviewing the application for modification, which proposed improvements largely unrelated to the completed portion of the development, required changes in the completed development solely to accommodate perceived deficiencies in it that had been previously reviewed and approved and which were protected from further challenge by the Statute of Limitations.
I
The appeal arises from the following facts and is more easily understood by referring to a map of the site annexed to the opinion.
In August 1982, petitioner, E.F.S. Ventures Corporation, obtained title to a 5.2-acre tract of land zoned for motel development and located along Old Montauk Highway in the Town of East Hampton. At the time petitioner acquired the property, known as the Beachcomber, it had been improved by a 12-unit motel building, a collection of 6 cottages containing 11 motel units, a storage shed and another building known as Hill House. Prior to petitioner’s acquisition, as early as 1977, the Town Planning Board had approved several applications for further development by previous owners, but no action pursuant to these approvals had been taken. Petitioner made *364 its first of two applications to develop the property in early September 1982. The 1982 site plan dealt primarily with construction on the rear or northern half of the property. Petitioner sought to remove the metal storage building, renovate the existing 12-unit motel building, relocate and renovate Hill House, and construct two new motel buildings. It proposed a new 30-unit building known as Ocean East on the east side of the property facing Old Montauk Highway and the Atlantic Ocean and a similar 20-unit building, Ocean West, on the west side. The six existing cottages on the front of the property were to remain. No environmental assessment form (EAF) accompanied petitioner’s site plan application, apparently because petitioner concluded that SEQRA was not applicable to this project. On September 29, 1982, the East Hampton Planning Board approved the site plan application subject to several conditions. For example, petitioner was required to grant the Town a 50-foot scenic easement surrounding a .1-acre pond found in the northeast corner of the property, relocate Hill House at least 75 feet from the pond, set back all septic systems and leaching pools a minimum of 100 feet from the pond, and take certain measures to control the storm water run off. A new roadway to provide motor vehicle access to Old Montauk Highway and roadways and walkways within the site were approved. Building permits were issued in November 1982, construction began immediately and by January 1983 the proposed construction had been substantially completed.
Accordingly, petitioner submitted a second application in late January 1983 seeking to modify the original site plan. The modifications concerned only the area in the front of the property and included removal of the six cottages containing the 11 motel units, construction of a new 28-unit motel structure along Old Montauk Highway, to be known as Oceanside, and construction of a swimming pool and tennis courts in the center of the property between Oceanside and the Ocean East and Ocean West buildings.
On February 18, 1983, the Town Planning Board, based on a recommendation of its own consultant, informed petitioner by letter that the Board had made an informal negative declaration under SEQRA. Following this informal negative declaration, on March 12, 1983, petitioner prepared and filed an EAF. The Planning Board’s consultant promptly prepared part two of the EAF. On March 16, 1983, the Planning Board after-reviewing the EAF, determined that the proposed modification *365 of the Beachcomber complex would result in an over-all small to moderate impact on the environment and that any adverse environmental impact could be mitigated by measures outlined in the EAF. The Board then issued a formal negative declaration under SEQRA (thus obviating the need for petitioner to prepare an environmental impact statement) and approved the application for site plan approval. On March 31, building permits were issued for the Oceanside structure and petitioner promptly proceeded with construction in the hope that the resort could open for the summer 1983 season.
On April 14, 1983, adjoining landowners and a group entitled the Concerned Citizens of Montauk commenced an article 78 proceeding against petitioner and the Planning Board (the Nielsen proceeding) in an attempt to prevent implementation of the January 1983 modified site plan. The Nielsen petition alleged that the approval was invalid because the Planning Board had issued its informal negative declaration prior to considering the factors contained in the EAF. Indeed, an EAF had not even been prepared until after the Board’s informal negative declaration had been made. On April 15, 1983, Supreme Court granted a temporary restraining order enjoining further construction.
At this time 90% of the development proposed in the original site plan had been completed. Of particular importance, the Hill House relocation and rehabilitation and Ocean East construction were completed. Additionally, a commitment to construct Oceanside pursuant to the modified site plan approval had been made, the six cottages had been demolished, the site had been excavated and the footings and foundation for Oceanside had been laid and a portion of the first story of the building had been framed.
Petitioner discontinued work until April 20, 1983, when Supreme Court lifted the temporary restraining order and, finding that there was no likelihood of success on the merits, denied the Nielsen petitioners’ request for a preliminary injunction. The Nielsen petitioners did not seek leave to appeal the denial of preliminary injunctive relief and no stay of the vacatur of the temporary restraining order was sought from the Appellate Division pursuant to CPLR 5518. Petitioner recommenced construction and the project was completed in June 1983.
One month later, however, Supreme Court granted the Nielsens’ article 78 petition to the extent of setting aside the *366 resolution of the Planning Board approving the modified site plan. It remitted the matter to the Planning Board and directed it to make its decision on whether to issue a negative or positive declaration under SEQRA after considering the factors found in the EAF and taking a "hard look” at the potential environmental impact. The court also enjoined the issuance of certificates of occupancy for the 64 units constructed or renovated pursuant to the original site plan submitted in September 1982. Petitioner appealed this decision but while its appeal was pending, it resubmitted to the Planning Board, in November 1983, an application for modified site plan approval which included an EAF. This time, however, the Planning Board, now composed of several new members, issued a positive declaration under SEQRA (ECL 8-0109; 6 NYCRR 617.2 [cc]) and ordered preparation of a draft environmental impact statement (6 NYCRR 617.2 [n]). In September 1984, after public hearings and the preparation of a final environmental impact statement (EIS), the Planning Board approved the modified site plan, but did so subject to several conditions found objectionable by petitioner. The most significant of these included: (1) the destruction of relocated Hill House to provide an area behind Ocean East and Ocean West where emergency vehicles could turn around, (2) the destruction of four units on the new Ocean East building, to permit widening of the roadway east of it, and (3) removal of the resort’s newly constructed roadway providing access from Old Montauk Highway and relocation of it to the west side of the site. Relocation of the roadway necessitated a further condition: the destruction of four units in the new Oceanside building to make room for the relocated roadway. These changes were prompted primarily by the Board’s concern over (1) the difficulty fire vehicles might have reaching the rear of the premises and turning around because of the width of the roadway east of Ocean East and the location of Hill House behind Ocean East and Ocean West and (2) the danger to vehicles entering Old Montauk Highway from the resort because a hump in the highway limited sight distance to approximately 250 feet east of the existing roadway entrance. The Board also required other, less drastic, changes revising the previously approved landscaping and drainage plan of the property, imposing new proposals for surveying and buffering the on-site pond and requiring that on-site walkways and roadways be redesigned and relocated.
Petitioner sought to mitigate these conditions without the *367 destruction of existing units and roadways. Among its proposals were a plan to improve the sight distance for eastbound traffic on Old Montauk Highway by reducing the grade of the highway by 18 inches — a project which had been approved by the Town Highway Superintendent and which petitioner agreed to pay for — and a plan to open an adjacent "paper road” known as School Lane, over which petitioner owned an easement. By opening School Lane an alternate access would be provided behind Ocean East and Ocean West for emergency vehicles, thereby removing the need to demolish Hill House or destroy new units in Ocean East. The Town Board rejected petitioner’s proposals concluding that School Lane could not be opened because it was a "wildlife corridor” and that Old Montauk Highway should not be regraded, although concededly it was "the most desirable alternative from an engineering standpoint”, because of the scenic and historic nature of the highway.
Accordingly, petitioner commenced an article 78 proceeding seeking to annul the September 1984 Planning Board resolution which had imposed substantial conditions upon the approval of its resubmitted modified site plan (E.F.S. v Foster). The petition was dismissed on the merits by Supreme Court.
Three months later, the Appellate Division modified Supreme Court’s order in the Nielsen case. It agreed with Supreme Court that the January 1983 modified site plan was improperly approved because the Planning Board’s finding of nonsignificance under SEQRA was made without the Board taking a hard look at the environmental factors listed in the EAF. The court stated, however, that the Nielsen petitioners were foreclosed from injunctive relief preventing the issuance of certificates of occupancy on the 64 units previously approved and constructed because "the four-month Statute of Limitations precludes the granting of relief concerning construction commenced and/or completed pursuant to the September 1982 * * * resolution (see, CPLR 217)” (Matter of Nielsen v Planning Bd., 110 AD2d 767, 769). Petitioner, relying on the court’s statement concerning the Statute of Limitations, sought certificates of occupancy for the portion of the development authorized in September 1982 and when the Building Inspector refused to issue them, it commenced a second article 78 proceeding to compel him to do so (E.F.S. v DeCristofaro). This second proceeding was dismissed by Supreme Court on the merits and appealed by petitioner and consolidated with the appeal taken in E.F.S. v Foster which *368 sought to annul the modified site plan approved by the new Board in September 1984.
In a Per Curiam opinion, the Second Department affirmed the judgments dismissing the petitions in both the Foster and DeCristofaro proceedings. The court rejected petitioner’s claim that the Planning Board should be equitably estopped from imposing conditions on the modified site plan, ruled that the Board was entitled to conduct a de novo review of the entire Beachcomber development when the modified site plan was submitted and held that the conditions imposed by the Board were not arbitrary and capricious. Justice Rubin dissented. He voted to grant the petitions, annul the September 1984 approval and prohibit the Board from conditioning site plan approval of the Oceanside modification on destruction of existing units or relocation of existing roads and to otherwise remit the matter to the Planning Board for further proceedings. The appeal is now before us by leave of the Appellate Division.
Preliminarily, petitioner notes that it has owned this property since 1982, that it has invested over $3 million in improving it, that it has at all times sought and received approval from the Town officials and abided by the conditions and requirements imposed upon it by the Town Board and its consultants and that the development, as completed, violates no public health statute, zoning ordinance or minimum safety, fire or traffic requirements. Nevertheless, its property has been forced to remain vacant through five summer seasons and it has never produced a dollar in income. Petitioner estimates its lost profits at $1 million a year and its carrying charges at over $100,000 a month. Moreover, it alleges that to comply with the present "approval” of the Planning Board would require it to demolish 10 new luxury resort units before they are used and to relocate and rebuild newly constructed walkways, roadways, grades and plantings previously developed at the costs of hundreds of thousands of dollars.
II
Petitioner contends first that the Planning Board is es-topped from placing additional conditions on the development of the site. Generally stated, the doctrine of equitable estoppel prevents a party from pleading or proving an otherwise important fact because of something which it has done or omitted to do. If another rightfully relies upon its word or deed and, as a *369 result, changes position to his injury, so that it would be inequitable to permit the party to enforce rights inconsistent therewith, the courts will estop the party from taking the inconsistent position (see generally, Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443; White v La Due & Fitch, 303 NY 122; Lynn v Lynn, 302 NY 193).
Petitioner contends that the elements of estoppel are present in this case because (1) the Town Planning Board acted improperly in issuing the negative declaration under SEQRA when it approved the modified site plan without considering the factors found in the EAF (6 NYCRR 617.11 [a] [1]-[11]), and should have known that petitioner would rely on this action; (2) petitioner did, in fact, rely upon this finding of nonsignificance in deciding to proceed with the construction of the Oceanside development, and (3) petitioner’s change of position based on the Board’s action is clear; obviously it would not have placed at risk all construction completed pursuant to the approved September 1982 site plan by pressing its application for modification of that plan.
Petitioner contends further that its equitable position is unassailable because at the time it commenced construction of the Oceanside structure there was no pending proceeding seeking to enjoin construction and at the time petitioner completed construction a judicial finding had been made, by vacating the temporary restraining order and denying a preliminary injunction, that the Nielsen challenge to the modified site plan approval, the only legal action pending, was unlikely to succeed on the merits. Accordingly, petitioner contends that the Planning Board should be foreclosed from changing its position, making a positive declaration under SEQRA and attaching burdensome conditions on its approval of the site plan.
Notwithstanding petitioner’s position, we have held in several recent decisions that estoppel may not be invoked against a governmental agency to prevent it from discharging its statutory duties (see, Matter of Parkview Assocs. v City of New York, 71 NY2d 274 [decided herewith]; Scruggs-Leftwich v Rivercross Tenants’ Corp., 70 NY2d 849, 852, citing Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 449; Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88, 93-94). Although some of those decisions may suggest, as petitioner claims, that exceptions to the general rule may be warranted in "unusual factual situations” to prevent injustice *370 (see, Matter of Hamptons Hosp. & Med. Center v City Civ. Serv. Commn., supra, at 93-94, n 1 [narrowing the breadth of Bender v New York City Health & Hosps. Corp., 38 NY2d 662]; see also, Moore v Mayor, 73 NY 238, 245), we agree with the Appellate Division that this is not a case in which estoppel may be imposed.
Generally, governmental agencies are not subject to the defense of estoppel for two reasons. First, the doctrine is not applied against the government, as a matter of policy, because to do so could easily result in large scale public fraud. As stated long ago by the United States Supreme Court, "It is better that an individual should now and then suffer by [governmental] mistakes, than to introduce a rule against an abuse, of which, by improper collusions, it would be very difficult for the public to protect itself’ (Lee v Munroe, 7 Cranch [11 US] 366, 370). The second, and more fundamental, reason why estoppel is not generally permitted against the government is that to do so may violate the doctrine of separation of powers. This consideration is dispositive in the case before us.
The State Legislature has granted municipalities the right to condition land development within their boundaries on approval of an acceptable site plan. The Town of East Hampton has further delegated the decision of whether to grant such approvals to the Town Planning Board. A large measure of discretion is afforded to local authorities with respect to the decision on whether to approve the site plans provided, however, that they comply with both the letter and spirit of the SEQRA review process. That being so, a judicial estoppel preventing respondents from implementing the statutory SEQRA requirements as they are required to do, would place the court in opposition to the elected branches of government and override legislative mandates establishing environmental review procedures (see, Eden v Board of Trustees, 49 AD2d 277, 283; cf., Heckler v Community Health Servs., 467 US 51, 60-61 [applying a balancing process in determining whether estoppel against the government could be found]; People v Department of Hous. & Community Dev., 45 Cal App 3d 185, 119 Cal Rptr 266 [applying a similar balancing process and finding that the government should be barred by laches— a doctrine grounded on the same equitable principles as estoppel — from enjoining the development of mobile home park despite an environmental review , act violation]; see gener *371 ally, Berger, Estoppel Against the Government, 21 Chi L Rev 680).
This consideration is more than theoretical. The State has made protection of the environment one of its foremost policy concerns (ECL 8-0103 [legislative findings]). Thus, our statute, unlike many others, imposes substantive duties on the agencies of government to protect the quality of the environment for the benefit of all the people of the State. We have given strong support to implementing this legislative policy, believing that unless a hard look is taken at the environmental factors found in the EAF before a finding of nonsignificance is made, there is a danger that the subsequent finding, made after the EAF is reviewed, would merely be a "rubber stamp” or afterthought. We have insisted, therefore, that the statutory environmental review requirements of SEQRA must be met and have held that if they are not the governmental action is void and, in a real sense, unauthorized (see, Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 368-369; Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417; Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41, 43, modfg 79 AD2d 337). In view of this strong legislative policy and our decisions supporting it, we should not deny the Planning Board the power to exercise the responsibilities delegated to it by State and local law and estop it from exercising its statutory powers.
Ill
Petitioner contends further that even if respondents had the power to reconsider the entire site plan development, they exercised that power in an arbitrary and capricious manner when they ordered the destruction of improvements completed pursuant to a previous approval no longer open to legal attack.
In addressing that contention respondents concede, as they must, that were it not for petitioner’s decision to build the Oceanside structure, they would be without authority to order destruction of motel units in Ocean East and Hill House and the relocation of the roadway constructed pursuant to the September 1982 site plan approval. Since the first legal challenge to the Beachcomber development was not commenced until April 14, 1983, when the development was substantially completed, there could be no direct challenge to those improvements grounded upon a SEQRA violation because the *372 four-month Statute of Limitations had long since run (CPLR 217) and because, as a general rule, an injunction will not issue to prohibit a fait accompli (Finger Lakes Health Sys. Agency v St. Joseph’s Hosp., 81 AD2d 403, Iv denied 55 NY2d 606; Town of Oyster Bay v New York Tel. Co., 75 AD2d 598). And this is so even though the development violated environmental protection statutes (see, Golden v Metropolitan Transp. Auth., 126 AD2d 128, 132; Florida Wildlife Fedn. v Goldschmidt, 611 F2d 547; Steubing v Brinegar, 511 F2d 489, 495).
Nevertheless, respondents maintain, and the courts below agreed, that petitioner, by submitting the application for site plan modification, subjected the entire development to de novo SEQRA review and that new more stringent conditions were properly imposed on petitioner by the resolution of November 1984.
When a developer takes "action” which could arguably have a significant effect on the environment, the lead agency (6 NYCRR 617.2 [v]), may require an applicant to submit an environmental assessment form to assist the agency in carrying out its responsibility to determine whether the proposed action may have a significant effect on the environment and thus require the preparation of an environmental impact statement (EIS) (ECL 8-0109 [3], [2]). Ideally, the environmental assessment form or forms should be prepared as early as possible, thereby enabling the agency to make an early determination whether an EIS should be prepared (see, Matter of Programming & Sys. v New York State Urban Dev. Corp., 61 NY2d 738, 739; Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41, 47, supra). Indeed, if petitioner had been directed by the Planning Board to file an EAF when it submitted its September 1982 and January 1983 applications for site plan approval, this case would not be before us. We recognize, however, that for whatever reason, a lead agency might erroneously make a negative declaration under SEQRA, and thus not require the filing of an EIS before action :is taken. Under these circumstances, it is generally true that when the developer seeks to take further action at the site, the lead agency is empowered to consider the environmental impact of the entire project and is not limited to the consideration of the effects of the specific permit application before it (Matter of Town of Henrietta v Department of Envtl. Conservation, 76 AD2d 215, 223; see also, Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 205-206). When construction has not started at a given site, a rule which permits the lead *373 agency to exercise broad review powers in considering the effect of the entire development on the environment is both consistent with the goals of SEQRA (see, ECL 8-0101; Matter of Town of Henrietta v Department of Envtl. Conservation, supra, at 219-220), and harmonious with the Department of Environmental Conservation’s regulations which require the agency to consider the entire set of activities or steps in the development as the "action” (6 NYCRR 617.3 [k]). SEQRA must be construed reasonably, however (cf., Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417, supra) and although a lead agency, in examining the site plan, must consider all the facts and circumstances surrounding the proposed project, the broad review appropriate before construction has started is not always reasonable when development has been substantially completed. The Legislature manifestly intended that economic factors of the type and severity presented in this case should be considered with the environmental concerns (see, ECL 8-0103 [7], [9], as amended by L 1977, ch 252; Weinberg, Practice Commentary, McKinney’s Cons Laws of NY, Book 17 Vi, ECL 8-0103, at 63). Specifically, when a Planning Board is considering whether to approve a modification to a site plan where the developer has taken prior action, impervious to attack on SEQRA grounds because of the Statute of Limitations, it is arbitrary and capricious for a Board to condition approval of the modification on the developer’s compliance with remedial measures unless those remedial measures have some demonstrable connection with the environmental impact of the proposed modification. Otherwise stated, the Board cannot use its powers to review the environmental impact of the entire project as a pretext for the correction of perceived problems which existed and should have been addressed earlier in the environmental review process.
This case illustrates the abuses which may result from a contrary approach. The principal issue before the Board when the modified site plans were submitted was whether Oceanside should be constructed. Whether approval should be given to that proposal had no reasonable relationship to several of the substantial remedial measures the Board subsequently imposed on petitioner. At the time of its consideration of the modified site plan, the new Planning Board conceded that construction of the Beachcomber development was complete and that environmental requirements, approved by the Board’s consultant, had been imposed and satisfied by peti *374 tioner. Nevertheless, it reexamined the entire development and made significant changes, which were unrelated to the Oceanside development proposed in the modified site plan. It ordered destruction of Hill House to provide an area for emergency vehicles to turn around, to create a buffer area between the development and the neighboring properties to the north and to create better opportunities to control drainage and storm water runoff. Each of these perceived problems would exist in the same degree, however, whether or not the Board approved the building of Oceanside. Similarly, the Board required the destruction and removal of four units on the Ocean East building to provide emergency fire vehicles with easier access to the rear of Ocean East and Ocean West. Again, the perceived problem existed prior to the development of the Oceanside building; it was not changed by the decision on whether Oceanside could be built. Thus, respondents used the modified site plan application to impose additional burdens on petitioner to satisfy perceived environmental problems which were previously before the Board. The Board’s action in doing so was arbitrary and capricious and requires that its decision be set aside.
Accordingly, the order of the Appellate Division should be reversed, with costs, the petition in the Foster proceeding should be granted and the matter remitted to the Planning Board for further proceedings in accordance with this opinion and, in the DeCristofaro proceeding, the petition should be granted to the extent of requiring the Town Building Inspector to issue temporary certificates of occupancy for all units constructed under the site plan approved in September 1982.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, with costs, the petition in the Foster proceeding granted and the matter remitted to Supreme Court, Suffolk County, with directions to remand to the Planning Board for further proceedings in accordance with the opinion herein, and in the DeCristofaro proceeding the petition granted to the extent of requiring the Town Building Inspector to issue temporary certificates of occupancy in accordance with the opinion herein.
*375 [[Image here]]