(January 5, 1995)

■ In the Matter of MICHAEL BARBERA, Appellant, v NEW

YORK CITY EMPLOYEES RETIREMENT SYSTEM et al., Respondents. [621 NYS2d 46] —Judgment, Supreme Court, New York County (Beverly Cohen, J.) entered August 5, 1993, which confirmed the administrative determination suspending petitioner's pension and ordered restitution, and which dismissed the petition, unanimously reversed, on the law, the facts, and in the exercise of discretion, without costs, to restore the petitioner's pension rights, retroactively, with the appropriate accumulated interest. The Clerk is directed to enter judgment in favor of petitioner accordingly.

The operative facts are not in dispute. The petitioner is a 74 year old former laborer for the New York Water Supply Bureau (1947-1950) and New York Transit Authority police officer (1950-1976). On February 20, 1947, the petitioner joined the New York City Employees Retirement System (NYCERS), and on July 10, 1964, he elected to make his pension contributions to the NYCERS based upon a plan which permitted retirement after 20 years of service. The petitioner remained employed by the Transit Authority for 26 years until 1976 when NYCERS granted him ordinary disability retirement based upon a line-of-duty hip injury.

In June of 1981, the petitioner applied for a part-time, non-pension, non-benefit position with the New York City Department of Environmental Protection (DEP). Prior to taking the job, the petitioner inquired of his new supervisor whether this position would affect his pension rights, and he included the fact that he was a NYCERS pensioner on his employment application. The petitioner was assured by his supervisor, based upon numerous opinion letters written by Corporation Counsel, that since the Transit Authority was legally distinct from the City and the State, this part-time City job would not affect his pension. The petitioner was hired at a rate of $5.00 per hour for a 17 hour work week, and in later years received salary increases up to $9.33 per hour. His maximum yearly income at the part-time City position was $7,987.72.

After 10 years of employment with the DEP, the petitioner received a letter from NYCERS indicating that he owed the pension fund $15,229.35, which was improperly paid him. A few months later the petitioner received a second letter stating that he owed $89,964.27 to the fund. The NYCERS informed the petitioner that his future monthly payments would be suspended until the overpayment was recouped, and his entitlement would be reduced to a $10 per month annuity for health insurance.

The petitioner then brought the instant CPLR article 78 proceeding to compel restoration of his pension. In opposition, the City conceded that it had changed its position with respect to the distinction between City and public authority employment for purposes of restricting reemployment under its pension system, but argued that its former opinions were not binding, and that petitioner's reliance upon his supervisor's assurances was unjustified. The Supreme Court agreed, deferring to the reformulated statutory interpretation of NYCERS. We reverse.

The agency's 10 year lag in asserting an unprecedented position to recoup past disability payments from a pensioner who relied upon 20 years of prior consistent, contrary City policy was both arbitrary and capricious (see, *Matter of E.F.S. Ventures Corp. v Foster,* 71 NY2d 359). Were the respondent's actions committed by a private individual, rather than a City pension fund, equitable estoppel would certainly preclude this belated attempt to recoup $89,964.27 from a 74 year old unemployed man (see generally, *Triple Cities Constr. Co. v Maryland Cas. Co.,* 4 NY2d 443). However, estoppel generally will not bar the government from changing its position in the exercise of a governmental function such as its management of this retirement plan (see, *Matter of Galanthay v New York State Teachers' Retirement Sys.,* 50 NY2d 984, 986).

The City has concededly vacillated on the petitioner's status. In addition, its present position is inconsistent with the governing statutory section which states that a pension will be jeopardized by subsequent City employment where such pension was received "by reason of * * * prior employment by the city or any agency" (NY City Charter § 1117; see, *Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669, 675 [no special interpretive or policy deference to be accorded administering agency against plain statutory language]). The City's present position is also inconsistent with the majority of New York cases which uphold the distinction between City and public authority employment (see, *Matter of New York Post Corp. v Moses,* 10 NY2d 199, 203). The wealth of authority supporting the separate existence of the City and public authorities cannot bind NYCERS to its former less restrictive policy governing reemployment, but it can be considered when evaluating the imposition of this $89,964.27 burden on the petitioner 10 years after the fact for reemployment in a part-time City position which was formerly presumably allowable (see, *Matter of E.F.S. Ventures Corp. v Foster, supra).* The agency's penalty in this situation was inappropri-

ate, and should be set aside. Concur—Murphy, P. J., Sullivan, Rosenberger, Nardelli and Tom, JJ.