CLARE KREAG MALOY, Respondent, Appellant, v. MARGUERITE MONTGOMERY, as Executrix, etc., of JAMES H. MONTGOMERY, Deceased, Appellant, Respondent.

Fourth Department, December 23, 1935.

*Thomas P. McCarrick* [*Adolph J. Rodenbeck* of counsel], for the plaintiff.

*J. Emmett O'Brien*, for the defendant.

CROSBY, J. Plaintiff's husband, William J. Maloy, and his partner in the real estate business were desirous of purchasing a piece of real property, known as the Maplewood Apartment in the city of Rochester. The partner's name was Raymond T. Shafer. Maloy and Shafer applied to defendant's testator, James H. Montgomery, for a loan of $20,000 to be used in buying said real estate. A contract, Exhibit B, attached to the complaint,

was entered into, by the terms of which Montgomery was to advance $20,000, for which he was to take a second mortgage on the premises, the Albany Savings Bank already holding a first mortgage for $48,200. As shown by Exhibit B, one of the conditions of Montgomery's advance of $20,000 in cash was that Shafer and Maloy were, at the same time, to purchase from Montgomery three parcels of real estate of the aggregate agreed price of $30,250, on which they were to give back, or assume, mortgages in the aggregate of $15,280. The difference between the agreed value of the three parcels of land, sold by Montgomery to Shafer and Maloy, and the mortgages thereon, either given or assumed by the latter, was $14,970, which, with the $20,000 in cash, advanced by Montgomery, made an indebtedness of $34,970 to be secured by a second mortgage on the Maplewood Apartment. The mortgage actually given was for $38,000, and it, and also the bond accompanying it, were executed by Shafer's wife, and by Maloy's wife, the plaintiff.

Plaintiff here sues to obtain her release as an obligor on said bond. Let us consider, first, her third alleged cause of action. It is based on an allegation that the bond and mortgage were tainted with usury to the extent of $3,030, being the difference between the aforesaid $34,970 and the amount for which the bond and mortgage were given. The trial court properly found against plaintiff's claim of usury. Respondent has not overlooked the supplemental agreement attached to Exhibit B, which reads: " It is further agreed that parties of second part [Shafer and Maloy] agree to take the above stated properties at prices which will enable party of the first part to get prices on these properties which will cover all amounts and expenses incurred in acquiring and retaining these properties. The above amounts stated being estimated."

Respondent (who is appellant so far as this usury matter is concerned) says that the above-quoted addition to Exhibit B was merely what might be called a smoke screen to cover up the usury. Its meaning might not be entirely clear but for the testimony given by plaintiff's own witness, Shafer, and his testimony clearly absolves Montgomery from usury. He says that a contemplated adjustment of the $3,030, together with some small items of taxes and other expenses, would show that Montgomery owed Shafer and Maloy an aggregate of $3,232.34. He states, in substance, that Montgomery expected to make such adjustment but became ill shortly after the mortgage deal was completed; and went to the hospital, and that he visited Montgomery at the hospital and found him very ill. I quote from his testimony: " I said I didn't come to talk business. I said I just wanted to see Mr. Montgomery, how

he was. * * * I went out to see him on several occasions and he always said two or three times, he said, ' Mr. Shafer, we never settled this.' I said, ' Wait until you are better, no use talking business.' * * * We never had any final [settlement].''

Upon cross-examination Shafer said that he had done a great deal of business both for and with Montgomery and '' he was always square.'' And when asked the direct question whether there was ''Any agreement with Mr. Montgomery whereby you were to pay him anything in addition to the interest,'' etc., the answer was, '' No, we never had any agreement,'' etc.

Later, on redirect examination, Shafer testified as follows: '' He [Montgomery] said, ' Do you mind Mr. Shafer if we make this mortgage $38,000? ' He said, ' it will be easier when we get our adjustments.' He said, ' it will be easier to take off than add on to it.' He said, ' We understand each other.' ''

Even Maloy, plaintiff's husband, does not tell of any agreement for usury; the most he claims is that proper adjustments, which were never made, would show Montgomery owing him and Shafer about $3,232.

The matter of usury was properly disposed of by the trial court.

Plaintiff's first cause of action is based upon the claim that her name was signed to the bond through a mutual mistake, and her second cause of action is based upon the claim that her execution of the bond was due to a mistake upon her part and fraud on Montgomery's part.

The findings do not make clear whether the decision was based on the theory of mutual mistake, or mistake on one side and fraud on the other, but, in either case, we think the decision is contrary to the evidence, all of which was given by witnesses for the plaintiff.

To start with there is absolutely nothing in the record to justify a finding of mutual mistake of fact upon the subject of plaintiff's name being written in the bond. Plaintiff may have been mistaken, but Montgomery was not. He was a lawyer; the proof is that the papers were prepared by the attorney for Shafer and Maloy and delivered to Montgomery for his examination and approval, and he handed them to either Shafer or Maloy, when they were together, and told them to secure the execution of the papers by their respective wives, which they did by going personally to their respective homes, taking a notary with them to take the acknowledgments. Montgomery simply could not have been mistaken about the contents of the bond. And it is unbelievable that Shafer and Maloy did not know that their respective wives were executing the bond as well as the mortgage. They were both real estate dealers of years of experience; they executed both the bond and

mortgage themselves on the same day their wives did, and before the same notary, and the documents were drawn on the regular forms with which every one is familiar. The evidence would justify a finding that plaintiff did not know that she was executing a bond. The proof is that her husband told her that she was not undertaking any personal obligation but only releasing her dower interest. But that Montgomery did not know that plaintiff's name was written in the bond is quite impossible. Indeed the court's twentieth finding is that " Montgomery examined the unexecuted bond * * * and *concealed* the fact that her [plaintiff's] name was in the bond." How could he " conceal " what he did not know?

The only claim of plaintiff that is even arguable is that plaintiff, in executing the bond, made a mistake of which Montgomery took an unfair advantage. That he did so is not proved. The undisputed evidence is that he had no dealings whatsoever with the plaintiff. His negotiations were all with Shafer and Maloy. They testified that no demand was made that the wives execute anything but the mortgage, but, as before noted, the attorney for Shafer and Maloy drew the bond, inserting the names of the wives. Montgomery approved the unexecuted bond in that form, and surely Shafer and Maloy both knew the difference between a bond and a mortgage. Surely Montgomery and Shafer and Maloy all knew and intended that the wives of the latter were expected to execute the bond. Now, who, if anybody, practiced any fraud upon the plaintiff? No one but her husband. The only question is whether Montgomery can be charged with that fraud, if fraud was intended.

" It is an established principle of law that where a person acts for another who accepts the fruits of his efforts, the latter must be deemed to have adopted the methods employed, as he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the fraud by means of which they arose." (*Taylor* v. *Commercial Bank*, 174 N. Y. 181, 188.)

The case of *Bloomquist* v. *Farson* (222 N. Y. 375) also holds that one accepting the advantages of a bargain brought about through the efforts of his agent, must accept responsibility for the means by which it was brought about.

But in the instant case no one representing Montgomery made any representations to the plaintiff. In response to a request by defendant the trial court found, and properly so, that " The execution of said bond, Exhibit 2, by the plaintiff was not induced by any fraudulent representations by said James H. Montgomery or by any one acting in his behalf."

Shafer and Maloy were not the agents of Montgomery; they were dealing with him at arm's length. As a consideration of

loaning them money he demanded that their respective wives join in the execution of a bond and mortgage. Whatever fraud, actual or constructive, they, or either of them, practiced on plaintiff cannot be charged to Montgomery for they did not represent him, and there is no proof that they informed him of the fraud they had practiced. Indeed, it would be a fraud on Montgomery if plaintiff could blindly execute a paper she should have read (See *Metzger* v. *Ætna Insurance Co.*, 227 N. Y. 411) and thereby put into the hands of Shafer and Maloy the means of procuring $20,000 from Montgomery.

It does not seem important to mention that, after Exhibit B was executed, a supplemental oral agreement was entered into between Shafer and Maloy on the one hand and Montgomery on the other whereby an additional $2,000 was to be advanced by the latter, to meet a demand by the first mortgagee, Albany Savings Bank, that a payment be made on the first mortgage. It is stated by witnesses for plaintiff that the request for this additional $2,000 was the occasion for Montgomery's demand that the wives execute the mortgage but, as they say, no demand was made that the wives execute the bond. The question of what prompted the demand that the wives of Shafer and Maloy enter into the transaction does not enter into the questions here involved.

In view of our decision it is unnecessary to consider the point raised by appellant, that the complaint demands only that plaintiff be relieved from liability on the bond, while the judgment also relieves her from liability under a clause in the mortgage by which it is provided " that the mortgagors will pay the indebtedness," etc. For the purposes of this decision it may be assumed that the quoted provision, in the mortgage, is a part of the bond.

The part of the judgment which dismisses the third cause of action set forth in the complaint should be affirmed, and the balance of the judgment reversed on the law, with costs, and the complaint dismissed, with costs.

Certain findings should be disapproved and reversed and new findings made.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

The part of the judgment appealed from which dismisses plaintiff's third alleged cause of action is affirmed and the balance of the judgment is reversed upon the law and facts, with costs, and judgment directed for the defendant dismissing the first and second causes of action alleged in the complaint, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.