■ In the Matter of 54/55 Sixth Realty Corp. (Silverstein), Appellant, v Nathan Leventhal, as Commissioner of the Office of Rent Control, Department of Rent and Housing Maintenance, Housing and Development Administration, Respondent.—Judgment, Supreme Court, New York County, entered on February 4, 1974, dismissing this article 78 proceeding to review respondent's determination that the penthouse apartment in issue is not entitled to decontrol and establishing a legal maximum rent therefor at $334.68, effective May 1, 1968, reversed, on the law, without costs and without disbursements, and vacated, said determination dated July 20, 1973, annulled, and the matter remanded to respondent for further proceedings consistent herewith. With all due deference to the respondent, it is rent commission decisions such as this one which make New York City so unattractive to potential investors and builders. Although the certificate of occupancy for the subject premises concededly indicated legal use and occupancy of one penthouse, it appears from the facts developed in the instant proceeding that since at least 1944 there have been two penthouses existent in this building. The subject of the instant proceeding, identified as Penthouse No. 1, consists of eight rooms, four bathrooms, and two solariums. Another apartment, known as Penthouse No. 2, containing six rooms and three bathrooms, is not involved herein. The original 1944 rent control registration records disclose that the late Judge Jonah J. Goldstein, the freeze date tenant, had rented the entire penthouse and sublet approximately 40% thereof. Federal rent control orders, issued in March, 1944, fixed the rent at $380 per month for the entire penthouse and at $157.22 for the sublet portion thereof. In June, 1968, on application of a prior owner, an order was issued decontrolling the entire penthouse apartment (the maximum rent for which was then $480.49) pursuant to section 2 (subd f, par [15]) of the New York City Rent, Eviction and Rehabilitation Regulations, which provides for decontrol of certain apartments having "luxury" rents. On May 1, 1968, the then landlord leased Penthouse No. 1 to tenant Silverstein at a decontrolled rent of $800 a month but, the said landlord having failed to register the same with the Rent Stabilization Association, this apartment became subject again to rent control. (Administrative Code of City of New York, § YY51-4.0.) A recontrol proceeding was commenced and terminated in an order, issued on November 23, 1971, which found the premises to have been decontrolled on June 13, 1968, but held the matter in abeyance pending a directive from the Rent Stabilization Association that the landlord was in violation of the Rent Stabilization Law. In July, 1972, the District Rent Director, on his own motion, issued a notice that he intended revoking the 1968 decontrol order on the grounds that Penthouse No. 1 was not a legal unit, the penthouse was not (in 1968) occupied for single family occupancy and, therefore, "luxury" rent decontrol was unavailable to it. (Rent, Eviction & Rehabilitation Regulations, § 2, subd f, par

[15], cl[e].) Thereafter, on October 30, 1972, the District Rent Director issued orders revoking the order entered on November 23, 1971 and determining that Penthouse No. 1 was subject to rent control; and established the adjusted maximum rent therefor to be $334.65 per month, effective as of May 1, 1968. Petitioner became the landlord of the premises in 1969. At that time the apartment was decontrolled and under lease to tenant Silverstein at $800 per month. While the administrative proceedings above set forth were pending and on or about July 8, 1971, Silverstein vacated the premises without paying rent during the last 16 months of his occupancy. An action for such rent has been commenced and the outcome of the instant proceeding will determine the amount of said tenant's liability. Respondent contends that he was justified in reopening the prior decontrol order because of a prior owner's failure to inform him of what his own records disclosed, i.e., that ever since 1944 the penthouse had been separately occupied as two selfcontained apartments, albeit without sanction by the building's certificate of occupancy, each with its own registered rental. Respondent's failure to discover facts within its own files is not, in our view, the type of "illegality, irregularity in vital matters, or fraud", contemplated by section 88 of the Rent, Eviction and Rehabilitation Regulations. Moreover, petitioner was not the landlord in 1944 when the penthouse was subdivided, nor the landlord in 1968 when the decontrol order was issued and the premises rented to Silverstein. When petitioner acquired the property in 1969 it had the right to rely on respondent's existing records, including the June 13, 1968 order of decontrol; and the validity of the Silverstein rental. Significantly, Silverstein also accepted the validity of respondent's records and voluntarily and freely entered into a lease with the prior owner for an $800 a month rental. In sum, we find no legitimate basis on the instant record for permitting the respondent to reverse his own prior order; or for the clearly inequitable result achieved. Concur—Murphy, Birns and Nunez, JJ.; Stevens, P. J., and Capozzoli, J., dissent in the following memorandum by Capozzoli, J. The prior owner of the building in question obtained an order of decontrol in 1968 covering the entire penthouse. Such order was obtained pursuant to the "luxury" decontrol provisions of the rent regulations. Petitioner's predecessor failed to disclose, at the time it applied for such decontrol, that the penthouse in question had for years been utilized as two separate apartments in violation of the certificate of occupancy which authorized only one penthouse unit. As such, it did not qualify for luxury decontrol. Section Y51-3.0 (subd e, par 2, cl [i], subd [7], subpar [IV]) of the Administrative Code, and section 2 (subd f, par [15], cl [e]) of the New York City Rent, Eviction and Rehabilitation Regulations both provide that luxury decontrol "shall remain effective only so long as the housing accomodations are not occupied for other than single family occupancy". Upon the reopened proceeding respondent correctly found that the penthouse had been utilized for other than single family occupancy. The respondent is empowered to modify or revoke a prior order issued by it where it finds that such order "was the result of illegality, irregularity in vital matters, or fraud". (Rent, Eviction & Rehabilitation Regulations, § 88.) Certainly, the nondisclosure of which petitioner's predecessor was guilty constituted at least such an irregularity. Since the penthouse floor had been improperly divided into two apartments, it was not occupied in 1968 for "single family occupancy" (Rent, Eviction and Rehabilitation Regulations, § 2, subd f, par [15], cl [e]) and did not qualify for luxury decontrol. There is, therefore, a rational basis for respondent's determination, and whether the court would have acted differently in these circumstances is irrelevant.

Upon the findings of a rational basis in the record, the judicial function is exhausted. *(Rochester Tel. Corp. v United States,* 307 US 125, 146). As we held recently in *Matter of Plaza Management Co. v City Rent Agency* (48 AD2d 129, 131): "Petitioner has failed to demonstrate that the commissioner's determination was without rational basis or warrant in the record or that it was arbitrary or capricious. Whether or not we (or Special Term) would have acted differently * * * is of no moment."