■ In the Matter of LILLIAN KAMINSKY, Appellant, v STANLEY BREZE-NOFF, as Commissioner of the New York City Department of Social Services, et al., Respondents.—Judgment, Supreme Court, New York County, entered January 9, 1980, denying, in a CPLR article 78 proceeding, petitioner's application to vacate a determination of the New York State Department of Social Services (Department), affirming a decision of the New York City Department of Social Services (Agency), which denied petitioner's applica-

tion for reimbursement for home attendant services paid for by petitioner's daughter and the Jewish Association for Services for the Aged (JASA), reversed, on the law, without costs and without disbursements, respondent's determination annulled, the petition granted, and the matter remanded for further proceedings in accordance herewith. Petitioner, an 83-year-old recipient of medical assistance, was hospitalized from February 23, 1978 to April 11, 1978. A hospital social worker concluded that she required home attendant services upon her release from the hospital and so informed the Agency. In a conversation with an Agency social worker, petitioner's daughter, Toby, informed him that she did not wish to use an attendant assigned from the Agency's roster list, but would prefer to secure from another service an attendant whom she could be satisfied would be suitable for her mother's particular needs. After Toby consulted with JASA, arrangements were made to provide petitioner with a home health aide through the AA Nurses' Registry. In a telephone conversation with the Agency social worker on April 10, 1978, Toby informed him of this arrangement. On April 11, 1978, petitioner, who was discharged from the hospital that day, signed (with an "X") an application for personal care services. For several days, the hospital provided attendant's care for petitioner at her home. From April 11 to May 25, 1978, she received the services to two home attendants secured from the AA Nurses' Registry. These were paid for in part by Toby and in part by JASA. The Agency refused to reimburse these expenditures on the ground that there had been no prior approval of the attendants, and this decision was affirmed after a fair hearing. The issue principally litigated in the fair hearing was whether the Agency had informed Toby that they required identifying information as to the attendants secured from the AA Nurses' Registry so that they could be evaluated for inclusion on the approved roster list, and whether Toby failed to give the information. The hearing officer concluded that such information had been requested and not given, and that therefore the Agency was unable to process the application, and there was no prior approval of the "provider" in question. The decision noted, further, that varied regulations obligate the Agency to evaluate the qualifications of proposed providers, require prior authorization, and contemplate direct payment to the providers. (18 NYCRR 505.14, 360.17 [a].) Special Term affirmed essentially for the reasons set forth by the hearing officer. It is, of course, true that the regulations require prior authorization and contemplate direct payments to the providers of home health aid and personal care services. However, it is well established that these regulations may not be applied with a literal rigidity that would effectively deny to eligible persons intended medical assistance. Where home attendant services are urgent, we think it clear that a petitioner and concerned relatives are not expected to defer arranging for such services pending Agency action, nor are they required to incur, as a result, the financial burden for such services where eligibility is otherwise established. (Cf. *Matter of Lawrence v Lavine,* 50 AD2d 734; *Sockin v Overcash,* 45 AD2d 717; *Matter of Cole v Wyman,* 40 AD2d 1033; *Matter of Rosenblum v Lavine,* 70 Misc 2d 667.) As respondent implicitly acknowledges on this appeal, the critical question is whether the Agency was justified in withholding approval for medical services for which petitioner would otherwise have been entitled to financial assistance. As perceived by the hearing officer at the fair hearing, the dispositive factual question was whether those acting on behalf of the petitioner failed to provide identifying information with regard to the home attendants who cared for petitioner although requested to give such information. The hearing made clear that petitioner herself and her daughter,

Molla, who lived with her, were both incapable of responding to any request for information. The responsible member of the family was Toby, who lived in her own apartment in the same building. Toby testified that she had no recollection of having been told to provide such information, and that she would certainly have done so if aware of the requirements. As against that, a representative of the Agency (not the social worker involved) testified on the basis of Agency records. Although these were not offered in evidence, it appears likely that the record was available to the hearing officer and the petitioner's representative . In any event, no objection has been raised in this proceeding to the form in which the Agency evidence was presented. This evidence was somewhat confused by a grouping together of all members of the family in describing what they were told, and by a preliminary failure to appreciate that Molla was not a person capable of responding to a request for such information. However, as described by the Agency representative, notes in the Agency record indicated that the subject of the information had been discussed with Molla and Toby on April 3 and again discussed with Toby on April 10, when Toby telephoned the assigned social worker to report the arrangement for attendants from the AA Nurses' Registry. Although Toby emphatically denied having discussed the subject with the social worker on April 3 and disclaimed any memory of the subject having come up in the April 10 conversation, there was a basis in the evidence for the hearing officer's conclusion that such a request had been made, and that the information had not been given. We do not find this factual determination to be as decisive as the hearing officer, and Special Term, concluded. The totality of circumstances present here made it, in our view, important to consider whether the failure to provide the information was a purposeful refusal to co-operate or, as seems immeasurably more probable, reflected a failure of understanding, and also to consider whether the Agency had discharged its own mandated obligation actively to assist applicants in securing information necessary to the processing of the application. (See 18 NYCRR 360.1 [e].) It is undisputed that petitioner required the attendant's services in question, that conclusion having been formed by a hospital social worker and confirmed by the Agency. Her financial eligibility for such services was never in question and, indeed, they would have been provided without cost to petitioner if her daughter were agreeable to accepting someone assigned from the already approved roster list. Indeed, there would have been no problem except for the concern of petitioner's daughter to insure that her mother received the services of someone who would understand her situation and was suitable to her needs. In that effort, she consulted with an accredited social agency and, with their assistance, secured attendants from what appears to have been an appropriate, reputable organization. Petitioner's daughter had every right to assume that the people so secured were qualified in every way, and there is no suggestion in this record that they were not in fact so qualified. Under these circumstances, it was important to consider whether the failure to provide the requested information—name, address, and Social Security number—was willful or the result of misunderstanding, and also to consider whether the Agency had adequately discharged its own functions with regard to the application. Certainly, it seems extremely improbable that petitioner's daughter, Toby, who had acted as a concerned daughter and who had contributed to the payment of the attendants, would have failed, if she understood what was required, to have asked the attendants, who were caring for her mother in an apartment in the same building in which Toby lived, for their names, addresses, and Social Security numbers, and commu-

nicated that information to the Agency. In addition, the facts raise a substantial question as to the Agency's understanding of its responsibilities. Their social worker was aware of the urgent need for home attendant services, knew that petitioner had been discharged on April 11, 1978, and was in possession of the application for assistance, which required the additional identifying information for processing. It is not easy to understand why the social worker, not having received this information within a few days of petitioner's discharge, did not call Toby to emphasize the importance of the information. Nor does it seem to us that it would have been an excessive burden for the social worker to have communicated directly with the attendants in the apartment in which they were working, or even with the reputable agency with which they were affiliated. We do not here determine that consideration of these aspects would have required a different decision by the Department. We do think that these aspects should have been considered, and it is clear that they were not. Concur—Birns, J. P., Sandler and Ross, JJ.

Markewich and Bloom, JJ., dissent in a memorandum by Bloom, J., as follows: We would affirm the holding of Special Term dismissing petitioner's application to reimburse her daughter Toby and the Jewish Association for Services to the Aged for sums expended for the home health aide procured for her. The facts are fairly set forth in the majority memorandum. The application made on behalf of petitioner by the hospital some few days prior to the time that petitioner returned home would have sufficed to secure home health care for her but for the insistence by her daughter Toby that she be allowed to select the aide. As a result of this insistence, she was permitted to make the choice. However, she was required to furnish the agency with the information necessary to enable it to list the aide on its rolls. This, Toby failed to do. That she was notified on two occasions (April 3, 1978 and April 10, 1978) by the agency of the requirement that she do so is explicitly set forth in two separate findings of fact. These findings are supported by substantial evidence.* In these circumstances we are at a loss to understand what, if anything, can be accomplished by a further hearing. In passing, we take occasion to note that our determination has not been influenced by the regulation (18 NYCRR 360.17 [a]), which requires direct payment to the vendors of the services. Indeed, we have recently held (Matter of Klein v Blum, 76 AD2d 768) "that there are 'serious health conditions' which will not await compliance with all bureaucratic niceties". Were that the only matter bedeviling us we would not hesitate to join the majority. Here, however, there was more. Here there has been a failure to furnish the information necessary to give effect to the application. That information was essential for unless it was obtained, respondent could not comply with the requirement of the regulation that "The local social services department shall conform with all State and Federal requirements for employment benefits and taxes and shall follow appropriate procedures for the payment for this service under this Title. Appropriate insurance coverage shall be provided to cover both personal injury and property damage liability" (18 NYCRR 505.14 [c] [2] [vi] [d]). The interpretation of

---

* The legal residuum rule which required that there be sufficient *admissible* evidence to support a prima facie case no longer obtains. Evidence wholly hearsay is sufficient to meet the substantial evidence standard if its quality is such as to render it worthy of belief (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, and particularly p 180; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7803.09).

this regulation by respondent and the emphasis accorded to it is entitled to great weight. Accordingly, we are of the opinion that the basis for recoupment is absent.