■ In the Matter of the NEW YORK STATE MEDICAL TRANSPORTERS ASSOCIATION, INC., et al., Respondents, v CESAR A. PERALES, as Commissioner of the Department of Social Services of the State of New York, Appellant.—In a proceeding pursuant to CPLR article 78, *inter alia,* to compel the Commissioner of the New York State Department of Social Services to process the petitioners' requests for approval of and reimbursement for providing certain transportation services, the Commissioner appeals, as limited by his brief, from so much of an order and judgment (one paper) of the Supreme Court, Nassau County (Lockman, J.), dated September 9, 1988, as, upon reargument and renewal, granted the petition without a hearing, to the extent of directing the appellant to process the petitioners' requests for retroactive prior approval of transportation service claims for services rendered prior to June 19, 1987.

Ordered that the order and judgment is reversed insofar as appealed from, on the law, with costs, and the proceeding is dismissed in its entirety.

By statute (Social Services Law § 365-a [2] [j]) and regulation (18 NYCRR 505.10 [b]), the New York State Department of Social Services (hereinafter the DSS) is required to ensure that recipients of Medicaid have transportation "when essential to obtain care and services" "upon prior approval, except in cases of emergency" (18 NYCRR 505.10 [b] [1]). The petitioner New York State Medical Transporters Association, Inc. (hereinafter Transporters) is a not-for-profit corporation, the members of which, like the petitioner Medicab, Inc., of New York, provide nonemergency transportation but which are apparently prohibited by New York City's plan for medical transportation *(see,* 18 NYCRR 505.10 [d]) from obtaining the requisite prior approval themselves. Rather, the medical provider must request approval for the transportation, apparently to ensure that transportation is medically essential; once approval is obtained, the medical provider communicates a prior approval number to the transportation provider, which includes the number on the claim form submitted to obtain payment. It is not disputed that "prior approval" does not guarantee that payment on a particular claim will be made. It merely ensures that the claim will be processed.

In or prior to 1985, the DSS required that requests for prior approval of transportation services in New York City be made by telephone to its fiscal agent, a separate entity which provides certain services to the DSS pursuant to contract. The petitioners claim that telephone requests for prior approval could number as high as 60,000 per month in New York City alone and that, because of the difficulty in obtaining prior approval, the DSS, through its fiscal agent, authorized a "retroactive prior approval" policy, whereby "prior approval" was in fact obtained after the transportation services were rendered. It is not clear when the DSS itself learned of this practice, but its fiscal agent had engaged in it for several years. By letter dated June 19, 1987, following less formal notification to and some consultation with the petitioner Transporters, the DSS notified all providers of transporation services that, *inter alia,* all requests for prior approval must be made to its fiscal agent by telephone before or on the same date that services are rendered, and that only under special circumstances "whereby extreme difficulty had been experienced by an ordering provider in getting through on the telephone to obtain Prior Approval * * * will a retroactive approval be given over the phone. Such requests should always be made as soon as possible within the month that service is required. In no event will any original request for non-emergency ambulance and ambulette transportation services be accepted 30 days beyond the date of medical service".

The petitioners commenced this proceeding seeking to compel the Commissioner to reestablish the "retroactive prior approval" policy and directing that the DSS process requests for "prior" approval pertaining to claims for services already rendered, some of them, the record reveals, as long as two years before the commencement of this proceeding. Implicitly denying the petitioners' request to compel reestablishment of "retroactive prior approvals", the Supreme Court granted the petition to the limited extent of directing the Commissioner to process requests for retroactive prior approval where services were rendered prior to June 19, 1987, when the DSS announced what the Supreme Court termed a "change" in policy, but which the record indicates was in fact a reminder that the DSS intended to abide by legislative policy.

The petitioners urge, *inter alia,* that the DSS should be estopped from refusing to process claims merely because they lack a prior approval number. We do not agree. Nor do we agree that the ratification analysis utilized by the Supreme Court justifies sustaining the petition to the limited extent

that it was sustained in the order and judgment appealed from.

As noted by the Supreme Court, ratification may arise when, after an agent acts beyond its authority, the principal condones those acts and accepts the benefits of them *(see, Pollitz v Wabash R. R. Co.,* 207 NY 113, 129; *see also,* 2 NY Jur 2d, Agency, §§ 155-161).* However, the record is devoid of any indication that the DSS knew of and thus intentionally condoned the acts of its agent so as to warrant obligating it to honor claims submitted as much as two years after rendition of services for which "prior" approval was legislatively required *(see,* 2 NY Jur 2d, Agency, § 160). And while the principles of estoppel might otherwise be pertinent, it is well established that, as a general rule, estoppel may not be invoked against a governmental agency to prevent it from discharging its statutory duty *(see, e.g., Matter of Parkview Assocs. v City of New York,* 71 NY2d 274; *see also, Matter of E.F.S. Ventures Corp. v Foster,* 71 NY2d 359, 369), in part because to invoke the doctrine "could easily result in large scale public fraud" *(Matter of E.F.S. Ventures Corp. v Foster, supra,* at 370). Moreover, no manifest injustice *(see, Matter of E.F.S. Ventures Corp. v Foster, supra,* at 369-370; *cf., Landmark Colony v Board of Supervisors,* 113 AD2d 741) warrants a departure from the general rule. The petitioners were well aware of the statutory requirement that prior approval be obtained for nonemergency medical transportation services and to ameliorate any hardship occasioned by the reminder that the DSS adhered to that policy, the DSS also adopted a 30-day grace period where circumstances prevented obtaining prior approval. Whether that policy is within the bounds of the statutory mandate is not before us, but there is no basis for requiring the DSS to process older claims, the particulars of which, because of their vintage, may be difficult if not impossible to verify. "The policy reasons which foreclose estoppel against a governmental entity in all but the rarest of cases * * * thus have irrefutable cogency in this case" *(Matter of Parkview Assocs. v City of New York, supra,* at 282). Therefore, the Supreme Court should have dismissed the proceeding in its entirety. Sullivan, J. P., Harwood, Balletta and Rosenblatt, JJ., concur.