Alexander, J.
(dissenting). Because, in my view, the record amply supports the conclusion that DSS ratified the acts of its fiscal agent with respect to the retroactive assignment of prior approval numbers, I would reverse the order of the Appellate Division and reinstate the judgment of Supreme Court. Therefore, I respectfully dissent.
In connection with the discharge of its statutory obligation to provide transportation services to Medicaid recipients, DSS delegated processing of payments for transportation services to its agent along with responsibility for issuing prior approval numbers which ensure that only medically necessary transportation services are provided to Medicaid recipients.* DSS gave its agent unfettered access to its computerized management database system (MMIS) and allowed the agent to process payments through that system without any control to ensure prior approval numbers had been assigned before services had been provided. These numbers were assigned upon telephone requests from medical providers and when in 1985 the volume of these telephone requests for prior approval numbers reached as high as 60,000 monthly, it became virtually impossible for medical providers to reach respondent’s agent to obtain the prior approval number in advance of arranging for transportation with providers like petitioner.
DSS admits that in response to this crisis, which would have left Medicaid recipients without needed transportation in violation of DSS’ statutory duty to provide such services, its agent devised a procedure to enable medical providers to arrange for these transportation services and then obtain the approval number. The agent designed a form and distributed it to providers to facilitate their use of the new policy and *134 that form served as input into respondent’s MMIS. Petitioners have used that form and the process announced by the agent beginning in 1985. They have submitted and been paid claims based upon retroactive prior approval numbers issued in this manner by the agent. Moreover, petitioners have submitted logs that reflect that retroactive prior approvals were processed and numbers assigned by the agent as early as 1985 and as late as 1987.
DSS acknowledges that it gave the agent the capability to process payments directly through its system but claims it had no knowledge that its agent had implemented the revised process. However, in May 1987, DSS acknowledged that "it ha[d] become apparent by the number of written prior approval requests after the date of service, without any original prior approval information in our system” that its agent had been assigning prior approval numbers after services had been provided. Indeed DSS indicated that requests for nonemergency transportation services by a medical provider beyond 30 days from the date of the medical services "will no longer be accepted” as a valid request for transportation clearly implying that, to its knowledge, such requests had previously been accepted and processed. DSS does not contend that it lacked the capability to identify that information which existed in its own computerized files since 1985.
Petitioners argue that DSS should be estopped to deny the processing of their claims for reimbursement for the transportation services furnished or should be held to have ratified the acts of its agent in retroactively issuing prior approval numbers. Supreme Court concluded that DSS had ratified its agent’s procedure for retroactively issuing prior approval numbers. The Appellate Division rejected this finding. That court concluded, and the majority agrees (see, majority opn, at 131) that the record was "devoid of any indication that the DSS knew of and thus intentionally condoned the acts of its agent” (160 AD2d 710, 712 [emphasis added]). Petitioners’ estoppel arguments likewise were rejected.
Although reasonable minds may differ as to whether there is sufficient evidence in the record to support Supreme Court’s finding that there had been an express ratification, in my view, the record clearly reflects sufficient evidence to demonstrate an implied ratification.
A principal’s ratification of the acts of its agent may be express or implied (see, Reuschlein and Gregory, Agency and *135 Partnership § 33, at 76) and may be demonstrated by the words, acts or conduct of the principal. Moreover, the principal’s acquiescence in the acts of its agent, may constitute implied ratification when the principal accepts a benefit resulting from those acts (see, Pollitz v Wabash R. R. Co., 207 NY 113, 119; Maloy v Montgomery, 246 App Div 482, 486, affd 272 NY 630; Hedman v Security Tit. & Guar. Co., 245 App Div 224, 227); the acceptance of such benefit substitutes for the intent necessary to establish an express ratification (Reuschlein and Gregory, op. cit., at 76).
DSS acquiesced in the retroactive prior approval policy in processing transportation claims because it failed for at least a year and a half to take any action with respect to information contained in its own files (see, Pollitz v Wabash R. R. Co., supra, at 129; Matter of 54/55 Sixth Realty Corp. v Leventhal, 51 AD2d 714, 715, affd 42 NY2d 935, 937; Matter of Minerva v Ward, 101 AD2d 754, 755, affd 63 NY2d 739). Moreover, it is undisputed that DSS failed to place adequate controls over its MMIS to ensure that its agent processed claims properly.
The majority apparently rejects implied ratification because, in its view, DSS has not accepted a benefit as a result of its agent’s policy. However, Supreme Court’s undisturbed finding was that petitioner’s provision of transportation services inured to DSS’ benefit because it fulfilled its statutory obligation to provide those benefits. Social Services Law § 365-a (2) (j) and 18 NYCRR 505.10 (b) (1) require DSS to provide transportation services when medically necessary. The record clearly demonstrates that a number of these claims, based on retroactive prior approvals were processed and paid. In the posture of this case, where the hearing initially ordered by Supreme Court was aborted by DSS’ concession that its agent was indeed employing a procedure of retroactive prior approval, the fact that the record does not contain proof that transportation services provided prior to June 1987 were medically necessary should not redound to DSS’ benefit. All agree that prior approval numbers ensure merely that a claim is processed rather than paid. Since it is the medical providers, not the transportation providers, who request transportation services, the medical necessity of the transportation is readily verifiable and will establish DSS’ obligation to pay the claims.
The majority concludes, however, that in any event the subject contracts were illegal and therefore unenforceable. A contract for the provision of transportation services to Medi *136 caid recipients however is not illegal; indeed the service is expressly required by statute and regulation. The question is whether DSS’ failure, through its agent, to provide prior approval numbers to petitioners in respect to medically authorized transportation prevents them from receiving payment for the services rendered on behalf of the State.
Where a statute requires performance of a function by a public officer in a specified manner, only substantial compliance with the statute is required to render the act valid (People ex rel. Lyon Co. v McDonough, 173 NY 181, 190-191; Brown v Ward, 218 App Div 643, 645). A statute is not required to be literally performed; the focus is on whether the purpose of the statute is served (id.). Thus, whether respondent was required to issue prior approval numbers before transportation services were provided to Medicaid recipients depends on the over-all significance of the prior approval requirement contained in Social Services Law § 365-a.
Social legislation must be interpreted and enforced in a "reasonable and humane manner in accordance with its manifest intent and purpose” (Matter of Sabot v Lavine, 42 NY2d 1068, 1069; see, Sawma v State of New York, 72 NY2d 979, 980; O’Neill v Blum, 95 AD2d 357, 360-361). In this case, Social Services Law § 365-a (2) (j) and regulation 18 NYCRR 505.10 (b) (1) require the State to provide transportation services to Medicaid recipients "when essential to obtain medical care and services”. Prior approval is required, except in emergency cases, to ensure transportation services are medically necessary before they are provided. Assignment of a prior approval number in response to a medical provider’s transportation order, is but a method of demonstrating that the services were viewed as essential in advance of the provision of those services. Neither the statute nor the regulation define prior approval, state who is responsible for verifying prior approval, or indeed require the assignment of a prior approval number. That methodology was merely respondent’s policy decision to satisfy the statutory prior approval requirement and while that methodology may be effective to reduce or eliminate the risk of fraud and may be viewed as a reasonable implementation of the statute at issue, there is no requirement that that method be viewed as the sole legal method of ensuring that transportation services are medically necessary. Such necessity exists because providers of medical services determine that transportation services are required and those providers are competent to make such determina *137 tions in the first instance. That the policy of respondent’s agent at issue here is not "illegal”, is demonstrated by respondent’s June 1987 memo "revising and enforcing” the prior approval policy and continuing the retroactive assignment of prior approval numbers for services provided within 30 days of the request. Surely the majority does not suggest that respondent’s current policy is likewise illegal.
Although the State has a valid interest in preserving the fiscal integrity of the Medicaid program and preventing fraud and collusion, "[the] regulations [and statute] may not be applied with a literal rigidity that would effectively deny to eligible persons intended medical assistance” (Matter of Kaminsky v Brezenoff, 77 AD2d 550, 551, appeal dismissed 51 NY2d 1009). The refusal to process these claims may ultimately redound to the detriment of the Medicaid recipients. I would reject the rigid application of the prior approval requirement under the particular circumstances of this case, and grant the petition herein to the limited extent of requiring respondent to process the rejected transportation claims (cf., Matter of Bryson v Blum, 97 AD2d 514, 515; O’Neill v Blum, 95 AD2d 357, 361, supra).
Chief Judge Wachtler and Judges Titone, Hancock, Jr., and Bellacosa concur with Judge Kaye; Judge Alexander dissents and votes to reverse in a separate opinion in which Judge Simons concurs.
Order affirmed, with costs.

 This assurance is secured by requiring the medical provider, rather than the transportation provider, to secure a "prior approval number” from DSS’ agent.